UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

ALAINA SPILKEVITZ,

                Plaintiff,                                CV-08-3407 (SJF)(ETB)

    -against-

                                                 **OPINION & ORDER**

CHASE INVESTMENT SERVICES CORP.,
LAWRENCE McGOVERN, individually and in his
official capacity, RICHARD EISEMAN, individually
and in his official capacity, and ROBERT V.
GARRETT, individually and in his official capacity,

                Defendant.
---------------------------------------------------------------X

FEUERSTEIN, J.

On August 20, 2008, plaintiff Alaina Spilkevitz ("plaintiff") commenced this action against defendants Chase Investment Services Corp. ("Chase")[1] and Lawrence McGovern ("McGovern"), Richard Eiseman ("Eiseman") and Robert V. Garrett ("Garrett") (collectively, "the individual defendants"), all in their individual and official capacities, alleging employment discrimination in violation of, *inter alia*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-12117; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-297; and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101-131. Chase and the individual defendants (collectively, "defendants") now move pursuant to

---

[1] The complaint initially named J.P. Morgan Chase & Co. as a defendant. However, by stipulation, the parties agreed to substitute Chase Investment Services Corp. as a defendant in lieu of J.P. Morgan Chase & Co.

1

Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss certain of the claims alleged in the complaint. For the reasons stated herein, defendants' motion to dismiss is granted in part and denied in part.

I.   Background

   A.   Factual Background[2]

Plaintiff is a thirty-eight (38) year old Jewish woman. (Complaint [Compl.], ¶ 9).

At all relevant times, McGovern, Eiseman and Garrett were "high ranking employee[s] of Chase who held * * * supervisory position[s] above [plaintiff] and/or above her supervisor." (Compl., ¶¶ 11-13).

In or around December 2005, plaintiff began working for Chase as a financial advisor at its branch located at 10 North Village Avenue, Rockville Centre, New York. (Compl., ¶¶ 1, 10, 14). According to plaintiff, when she began her employment with Chase, she was given the client list of a prior financial advisor, Frank Magri ("Magri"), whose clients were "disgruntled" over the lack of communication between them and Magri. (Compl., ¶¶ 2, 16).

Plaintiff alleges that on or about January 25, 2006, and again in March 2006, McGovern and Eiseman relieved her of multiple "income producing client account[s]" and gave those accounts to male financial advisors, including Peter Digangi ("Digangi") and Nick Mavro ("Mavro"). (Compl., ¶¶ 3, 17, 19-20).

---

[2] As is required on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the complaint, though disputed by defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiff. They do not constitute findings of fact by this court.

2

Plaintiff alleges that in February 2006, defendants allowed a former client of Magri to refer to her as a "Jewish piece of shit." (Compl., ¶¶ 3, 18).

Plaintiff alleges that on or about October 12, 2006, Garrett "became visibly drunk" following a quarterly meeting and, during a telephone call with plaintiff, propositioned her to be intimate with him in his hotel room. (Compl., ¶ 3, 21). According to plaintiff, after she refused Garrett's proposition, "managers and supervisors began to treat her differently * * *." (Compl., ¶ 21).

Plaintiff alleges that between January and February 2007, she advised her managers and supervisors that she was pregnant. (Compl., ¶ 23). According to plaintiff, on or about February 23, 2007, McGovern "rudely dismissed her" when she asked about maternity leave. (Compl., ¶ 24).

Plaintiff alleges that on or about March 29, 2007, Eiseman, McGovern and the branch manager privately met with a client of hers who was complaining about her. (Compl., ¶ 25). According to plaintiff, when clients complained about male financial advisors, they met the advisor's supervisors "on the main floor of the bank, in the open, and not in private rooms." (Compl., ¶ 26). Plaintiff further alleges that following that meeting, Eiseman and McGovern met with plaintiff, at which time, knowing that she was pregnant, they "berated and belittled [her] in such a severe and pervasive manner as to not only alter her work environment, but also [to] caus[e] her such anxiety and stress that she became immediately ill and in apprehension of fainting." (Compl., ¶¶27-28). Plaintiff alleges that although Eiseman and McGovern admitted that the client's complaint was really against the insurance company and Magri, they settled the claim, "thus blemishing Plaintiff's U4/U5." (Compl., ¶ 28). In addition, plaintiff alleges that in

3

April 2007, Chase settled, rather than arbitrated, two (2) frivolous claims against her for one hundred percent (100%) of their requested amount, which also blemished her "U4/U5." (Compl., ¶¶ 31, 32). Plaintiff further alleges that Chase informed her that she would have to compensate it for the settlements. (Compl., ¶ 31).

Plaintiff alleges that on or about April 2, 2007, she complained to McGovern and another supervisor about a client "who was constantly rude and harassing," to which they responded that there was nothing they could do to assist her. (Compl., ¶ 29).

Plaintiff alleges that beginning in April 2007, Eiseman commented that she should stay at home with her children. (Compl., ¶¶ 30, 40).

Plaintiff alleges that in May 2007: (1) Eiseman contacted many of her clients "in an attempt to convince then [sic] to submit complaints against her," (Compl., ¶ 34); (2) she was informed that "all of her work was to go through" Eiseman and McGovern, (Compl., ¶ 35); (3) McGovern berated her for e-mailing him, (Compl., ¶ 36); and (4) "the higher level employees of Chase [refused] to speak with [her] * * *," (Compl., ¶ 37; see also ¶¶ 42-43). In addition, plaintiff alleges that on or about May 11, 2007, McGovern and another supervisor "led [her] into an office to intimidate her while having a meeting," causing her to shake, "sweat profusely," and cry. (Compl., ¶ 38). Plaintiff further alleges that on or about May 25, 2007, Eiseman and McGovern interrogated her before a fraud investigator, whom she later heard inform those defendants that he did not think plaintiff did anything wrong. (Compl., ¶ 45).

Plaintiff alleges that on or about May 31, 2007, Eiseman and McGovern informed plaintiff that she was fired, to which she responded that she quit. (Compl., ¶ 46). According to plaintiff, those defendants then "began to verbally assault her." (Compl., ¶ 46). Plaintiff alleges

4

that she "was replaced by a twenty four year old male who she had previously trained." (Compl., ¶ 47).

B. Procedural History

On August 20, 2008, plaintiff commenced this action against defendants pursuant to, *inter alia*, Title VII, the ADA, the NYSHRL and the NYCHRL alleging, *inter alia*, that defendants discriminated against her based on her sex, disability (pregnancy) and religion; sexually harassed her; retaliated against her; and created a hostile work environment. (Compl., ¶¶ 3, 51-62). Specifically, plaintiff alleges that defendants: (1) relieved her of "income producing accounts" and reorganized them so as "to produce income for male Financial Advisors;" (2) made sexual advances towards her, such as "inviting her to a hotel for a sexual encounter;" (3) "condon[ed] and/or approv[ed] of clients verbally attacking her religion while on the floor during banking hours;" (4) "intentionally micro-manag[ed] her in an attempt to cause stress and anxiety;" (5) refused to make reasonable accommodations for her during her pregnancy; and (6) terminated her employment. (Compl., ¶ 3).

Defendants now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss certain of plaintiff's claims in the complaint.

II. Discussion

A. Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167

L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, ___ U.S. ___, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), cert. denied, 128 S.Ct. 2964, 171 L.Ed.2d 906 (2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, ___ U.S. ___, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein;

to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-153 (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

### B. Disability and Religious Discrimination Claims (First and Second Causes of Action)

Defendants contend that plaintiff's claims of discrimination based upon disability should be dismissed because the only disability alleged in the complaint is pregnancy, which is not a "disability" within the meaning of the ADA or the NYSHRL. Defendants also contend that plaintiff has failed to state a claim of religious discrimination because the single anti-Semitic comment by a customer was not sufficiently "severe and pervasive" and, in any event, cannot be attributed to Chase. Defendants further contend that, in any event, plaintiff's religious discrimination claims are time-barred.

Since plaintiff has agreed to withdraw her claims of disability and religious discrimination and retaliation, (see "Memorandum of Law in Opposition to Defendant's [sic] Motion to Dismiss" [Mem. Opp.], p. 4 n. 1), those claims are dismissed with prejudice.[3]

### C. Third Cause of Action

Defendants contend that plaintiff's third cause of action should be dismissed as

---

[3] For the sake of clarity, plaintiff's first and second causes of action, alleging violations of Title VII and the NYSHRL, remain to the extent that they allege gender discrimination and retaliation based upon gender discrimination.

7

"incoherent."

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings must give "fair notice of what the . . . claim is and the grounds upon which it rests" to enable the opposing party to answer and prepare for trial, and identify the nature of the case. Twombly, 550 U.S. at 555, 127 S. Ct. 1955; see also Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). When a complaint fails to satisfy the Rule 8 pleading standard, a district court may dismiss the complaint on motion or *sua sponte*. Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995).

The third cause of action alleges that Chase is liable for the discriminatory and retaliatory conduct of its policymaking employees because it was deliberately indifferent to such conduct by (1) having a custom or practice of discriminating and/or retaliating against plaintiff based on her gender and pregnancy; (2) failing to properly investigate her allegations of discrimination and retaliation; (3) inadequately training and/or supervising its employees; and (4) engaging in and/or condoning the discrimination and retaliation. (Compl., ¶ 58). This cause of action contains a sufficient statement of a claim for relief so as to satisfy the liberal pleading requirements of Rule 8(a)(2). Accordingly, this branch of defendants' motion to dismiss is denied.

D. Claim Under the New York State Constitution (Fourth Cause of Action)

Defendants contend that plaintiff's claim alleging a violation of Article I, § 11 of the New

York State Constitution[4] should be dismissed because plaintiff does not allege that she was subjected to any discrimination based on her "race, color, creed or religion."

The complaint fails to allege discrimination based on race, color or creed. Moreover, plaintiff has withdrawn her religious discrimination claims and does not oppose this branch of defendants' motion. Therefore, this branch of defendants' motion to dismiss is granted and plaintiff's fourth cause of action is dismissed with prejudice.

### E. NYCHRL Claim (Fifth Cause of Action)

Defendants contend that plaintiff's fifth cause of action, which alleges that defendants "wrongly discriminated against Plaintiff by a retaliatory attack based, [sic] on the fact that she has opposed practices forbidden by the [NYCHRL]," should be dismissed because plaintiff did not reside or work in New York City. Plaintiff contends that since some of the conduct of which she complained occurred at Chase's New York City headquarters, her NYCHRL claim is viable.

"When a non-resident seeks to invoke the coverage of the [NYCHRL] * * *, he or she must show that the alleged discrimination occurred within New York City * * *." Hoffman v. Parade Publications, 878 N.Y.S.2d 320, 323 (1st Dept. 2009) (quoting Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societa Per Azioni, 549 F.Supp.2d 549, 551 (S.D.N.Y. 2008)).

The only conduct of which plaintiff complains that purportedly occurred in New York

---

[4] Article I, Section 11 of the New York State Constitution provides: "No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state."

9

City is that she contacted "the highest ranking General Counsel for Chase" and the Vice President of Human Resources for Chase, presumably at Chase headquarters, located at 270 Park Avenue, New York, New York, (Compl., ¶ 10), to complain of the alleged harassment and discrimination by the named defendants at the Rockville Centre branch office, located in Nassau County. (Compl., ¶¶ 33, 42-44). (See Mem. Opp., pp. 16-17). Plaintiff does not allege that those individuals to whom she complained engaged in any discriminatory or retaliatory conduct, or rendered any discriminatory or retaliatory employment decision, and, thus, has not alleged that any discriminatory or retaliatory acts occurred within the boundaries of New York City. Since all of the alleged discriminatory and retaliatory acts occurred in Nassau County, outside of the five (5) boroughs of New York City, the branch of defendants' motion seeking dismissal of plaintiff's fifth cause of action is granted and plaintiff's NYCHRL claim is dismissed. See, e.g. Hoffman, 878 N.Y.S.2d at 324 (affirming the dismissal of the plaintiff's NYCHRL claim because there was no allegation that a discriminatory decision had been rendered in the employer's New York City office).[5]

---

[5] Although there is a conflict among state and federal courts as to whether the NYCHRL only applies where the impact of the discriminatory conduct is felt in New York City, see Shah v. Wilco Systems, Inc., 27 A.D.3d 169, 806 N.Y.S.2d 553 (1st Dept. 2005) and its progeny, or extends to claims alleging that a discriminatory decision was made in New York City, see Hoffman, 878 N.Y.S.2d 320 (citing cases on both sides of the conflicts and rejecting the "impact rule" set forth in Shah as dicta), it is unnecessary to resolve that issue here since plaintiff does not allege either that the impact of a discriminatory or retaliatory conduct was felt in New York City, or that a discriminatory or retaliatory decision was made in New York City. See, e.g. Hart v. Dresdner Kleinwort Wasserstein Securities, LLC, No. 06 Civ. 0134, 2006 WL 2356157, at *9 (S.D.N.Y. Aug. 9, 2006) ("Although the courts differ on whether the impact of a discriminatory action must be felt within the five boroughs [of New York City], all the courts agree that the discriminatory acts must be made within the City.") However, it is noted that the cases cited by defendants in support of its claims that the NYCHRL claims should be dismissed rely upon the "impact rule" set forth by the First Department in Shah, which the First Department recently rejected as dicta in Hoffman. See also Rylott-Rooney, 549 F.Supp.2d at 552 (recognizing that

1. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure states that a party should be "freely" given leave to replead "when justice so requires." Fed. R. Civ. P. 15(a)(2). Absent a showing of undue delay, bad faith or dilatory motive on the part of the plaintiff, undue prejudice to the defendant, or the futility of the amendment, a plaintiff should be granted leave to replead upon granting a motion to dismiss. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Accordingly, plaintiff is granted leave to amend her complaint to assert a valid claim under the NYCHRL **within thirty (30) days** from the date this order is served with notice of entry upon her. Failure of plaintiff to timely file an amended complaint in accordance with this order will result in her NYCHRL claim being dismissed with prejudice.

F. Remaining Claims Against the Individual Defendants

1. Title VII Claims

Defendants correctly contend, and plaintiff concedes, (Mem. Opp., p. 14), that individual defendants may not be sued in their individual or personal capacity under Title VII. See Sassaman v. Gamache, 566 F.3d 307, 315-316 (2d Cir. 2009) (quoting Patterson v. County of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004)). Accordingly, the branch of defendants' motion seeking to dismiss plaintiff's Title VII claims against the individual defendants in their individual capacity is granted and those claims are dismissed with prejudice.

---

"[a] number of federal courts * * * have concluded, in line with the dictum in Shah, that the fact that a decision to terminate is made in New York [City] does not establish that the [NYCHRL] * * * cover[s] an individual's claim," but finding that the NYCHRL applies either when the discriminatory act occurs in New York City, or where the injury is felt in New York City.)

11

## 2. NYSHRL Claims

Defendants also contend that plaintiff fails to state a claim against the individual defendants for a violation of the NYSHRL pursuant to an "aiding and abetting" theory because she has not alleged a primary violation of the NYSHRL[6] or sufficient facts indicating that each supervisor acted in concert with one another. Plaintiff contends that she has sufficiently pled that the individual defendants "engaged in discriminatory conduct as well as aided and abetted the conduct of [Chase] and the other individuals." (Mem. Opp., p 15).

The NYSHRL makes it unlawful for an employer to discriminate on the basis of, *inter alia*, sex. See N.Y. Exec. Law § 296. An individual may be liable under the NYSHRL only if her or she is an employer under New York Executive Law Section 296(1), or if he she was an "aider or abettor" under New York Executive Law Section 296(6). See Lopes v. Caffe Centrale LLC, 548 F.Supp.2d 47, 54 (S.D.N.Y. 2008); Prince v. Madison Square Garden, 427 F.Supp.2d 372, 384 (S.D.N.Y. 2006). Since there is no allegation that any of the individual defendants had "any ownership interest [in Chase] or any power to do more than carry out personnel decisions made by others," Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984), they were not "employers" within the meaning of Section 296(1) of the NYSHRL.

However, Section 296(6) of the NYSHRL provides that it shall be an unlawful

---

[6] This contention is without merit, since defendants have not even moved to dismiss plaintiff's claims alleging discrimination based on sex and retaliation for her complaints about such discrimination and, thus, plaintiff's NYSHRL claim based on sex discrimination and retaliation remain.

12

discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). The Second Circuit has held that individual liability may be imposed under the NYSHRL on a co-worker who "actually participates in the conduct giving rise to a discrimination claim," irrespective of whether that co-worker possessed the authority to do more than carry out personnel decisions made by others. Feingold v. New York, 366 F.3d 138, 157-158 (2d Cir. 2004) (quoting Tomka, 66 F.3d at 1317).

Since plaintiff alleges, *inter alia*, that the individual defendants were primarily and directly responsible for much of the alleged discriminatory and retaliatory conduct and that they acted together and/or with other management and supervisory employees to create a hostile work environment for plaintiff, the complaint sufficiently alleges "aiding and abetting" liability under the NYSHRL against the individual defendants. See, e.g. Prince, 427 F.Supp.2d at 385 (denying the branch of the defendants' motion seeking dismissal of the NYSHRL claims against one of the individual defendants since the plaintiff alleged that that defendant acted with other defendants and management to create the hostile work environment and directly perpetrated the harassment). Accordingly, the branch of defendants' motion seeking to dismiss the NYSHRL claims against the individual defendants is denied.

III. Conclusion

For the reasons stated herein, defendants' motion to dismiss is granted to the extent that plaintiff's claims alleging discrimination based upon disability and religion and retaliation for such discrimination are dismissed with prejudice; plaintiff's Title VII claims are dismissed with

prejudice as against the individual defendants; plaintiff's fourth cause of action is dismissed with prejudice; and plaintiff's NYCHRL claim is dismissed without prejudice, and plaintiff is granted leave to amend that claim within thirty (30) days from the date this order is served with notice of entry upon her; and defendants' motion is otherwise denied. The parties are directed to appear in my courtroom at 1010 Federal Plaza, Central Islip, New York on September 21, 2009 at 12:30 p.m., with authority or persons with authority to resolve this action, for a settlement and/or scheduling conference. Further, the parties are directed to engage in good faith settlement negotiations prior to the conference.

The Clerk of the Court is directed to service notice of entry of this Order on all parties in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure.

SO ORDERED

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: August 27, 2009
       Central Islip, N.Y.

Copies to:

Law Office of Steven A. Morelli
1 Old Country Road
Carle Place, New York 11514
Attn: Anthony Christopher Giordano, Esq.

Seyfarth Shaw LLP
620 Eighth Avenue
New York, New York 10018
Attn: Robert Steven Whitman, Esq.

Greenberg, Traurig LLP
200 Park Avenue
New York, New York 10166
Attn: Lauren Rachel Tanen, Esq.